Citation Nr: 1719098 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-18 540A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs VISN 20 Network Payment Center 
in Portland, Oregon


THE ISSUE

Payment for unreimbursed medical expenses for services rendered by Cassia Regional Medical Center, Burley, Idaho on January 4, 2012 in the amount of $7,226.06. 


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Fitzgerald, Associate Counsel




INTRODUCTION

The Veteran served on active duty from August 1964 to July 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2012 decision of the Department of Veterans Affairs (VA) Veterans Integrated Service Network (VISN) 20 Network Payment Center in Portland, Oregon.


FINDINGS OF FACT

1. The Veteran was enrolled in the VA Health Care system, had no other insurance or medical payment contracts, had no contractual recourse for payment by a third party, and was personally liable for the charges.

2. The Veteran as a layperson following a recent heart attack, would have reasonably expected that a delay in receiving the medical procedure on January 4, 2012 to assess the severity of his chest pains could have been hazardous to his life or health.

3. There is competent, credible evidence that on January 3, 2012, a physician of the Twin Falls Veterans Affairs Medical Center Community Based Outpatient clinic (CBOC) directed the Cassia Regional Medical Center physician to provide the procedure in question.

4. There is competent, credible evidence that on January 3, 2012, representatives of Cassia Regional Medical Center were unsuccessful in their multiple attempts to contact the VA Medical Center in Boise, Idaho in order to transfer the Veteran.





CONCLUSION OF LAW

The criteria for reimbursement of unauthorized medical expenses incurred on January 4, 2012, at Cassia Regional Medical Center are met. 38 U.S.C.A. §§ 1725, 5107 (West 2014); 38 C.F.R. §§ 3.102, 17.1000-17.1005 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Because the claim in this case is governed by the provisions of Chapter 17 of Title 38 of the United States Code, the VCAA and its implementing regulations are not applicable. See Barger v. Principi, 16 Vet. App. 132, 138 (2002) and Lueras v. Principi, 18 Vet. App. 435 (2004).

That notwithstanding, the Board has reviewed the case for purposes of ascertaining that the Veteran has had a fair opportunity to present arguments and evidence in support of his claim for payment or reimbursement for the cost of medical treatment. In short, the Board concludes that requirements for fair development of the appeal have been met. 

II. Legal Criteria

The Veteran seeks payment or reimbursement for services rendered for nonservice-connected conditions in a non-VA facility on January 4, 2012, under 38 U.S.C.A. § 1725 and 38 C.F.R. §§ 17.1000-1002.

Historically, previous regulatory provisions required that, to be eligible for reimbursement, the treatment must satisfy all of the following conditions:

 (1) The emergency services were provided in a hospital emergency department or a similar facility providing emergency care;
 
 (2) A prudent layperson would have reasonably expected that delay in seeking immediate medical attention for the initial evaluation and treatment would have been hazardous to life or health;
 
 (3) A VA or other Federal facility was not feasibly available and an attempt to use them beforehand would not have been considered reasonable by a prudent layperson;
 
 (4) The care beyond the initial emergency evaluation and treatment was for a continued medical emergency of such a nature that the Veteran could not have been safely discharged or transferred to a VA or other Federal facility, with the medical emergency lasting only until stabilization of the Veteran;
 
 (5) The Veteran was enrolled in the VA health care system at the time the emergency treatment was furnished and had received medical services under 38 U.S.C. Chapter 17 within two years before the non-VA emergency treatment;
 
 (6) The Veteran is financially liable to the non-VA provider of the emergency treatment;
 
 (7) The Veteran has no health insurance coverage for payment or reimbursement for the emergency treatment;
 
 (8) The Veteran has unsuccessfully exhausted claims reasonably available against a third party in the case of an accident or work-related injury; and
 
 (9) The Veteran is not eligible for reimbursement under 38 U.S.C. § 1728, which applies primarily to emergency treatment for a service-connected disability. (Eligibility under § 1728 is neither claimed nor apparent from the record.)
 
38 C.F.R. § 17.1002 (2007). 

Primarily at issue were the third and fourth elements; and in particular, whether the care beyond the initial emergency evaluation and treatment was for a continued medical emergency of such a nature that the Veteran could not have been safely discharged or transferred to a VA or other Federal facility.

Effective October 10, 2008, the statutory provisions of 38 U.S.C.A. § 1725 and § 1728 were amended. See Veterans' Mental Health and Other Care Improvements Act of 2008, Pub. L. No. 110-387, § 402, 122 Stat. 4110 (2008). The Act made various changes to Veterans' mental health care and also addressed other health care matters. Here, the changes are liberalizing in that they make reimbursement for medical expenses mandatory instead of discretionary, as well as expand the definition of "emergency treatment" beyond the point of stabilization. In addition, the changes apply the more liberal prudent layperson standard for determining whether an actual medical emergency existed under either 38 U.S.C.A. § 1725 or § 1728.

Specifically, the Act expanded the meaning of "emergency treatment" under 38 U.S.C.A. § 1725(f)(1) and § 1728(c) by stating that emergency treatment means medical care or services furnished, in the judgment of VA (a) when Department or other Federal facilities are not feasibly available and an attempt to use them beforehand would not be reasonable; (b) when such care or services are rendered in a medical emergency of such nature that a prudent layperson reasonably expects that delay in seeking immediate medical attention would be hazardous to life or health; and (c) until such time as (i) the Veteran can be transferred safely to a Department facility or other Federal facility and such facility is capable of accepting such transfer; or (ii) the Veteran could have been transferred safely to a Department facility or other Federal facility, but no Department facility or other Federal facility agreed to accept such transfer; and the non-Department facility in which such medical care or services was furnished made and documented reasonable attempts to transfer the Veteran to a Department facility or other Federal facility. See 38 U.S.C.A. § 1725 (West 2014).

Pursuant to 38 C.F.R. § 17.1002(a)-(h) (2016), to be eligible for payment or reimbursement for emergency services for nonservice-connected conditions in non-VA facilities under the statute and implementing regulations, the Veteran must satisfy all of the following conditions: 

 (a) The emergency services were provided in a hospital emergency department or a similar facility held out as providing emergency care to the public;

 (b) The claim for payment or reimbursement for the initial evaluation and treatment is for a condition of such a nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health (this standard would be met if there were an emergency medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent layperson who possesses an average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part);

 (c) A VA or other Federal facility/provider that VA has an agreement with to furnish health care services for Veterans was not feasibly available and an attempt to use them beforehand would not have been considered reasonable by a prudent layperson (as an example, these conditions would be met by evidence establishing that a Veteran was brought to a hospital in an ambulance and the ambulance personnel determined the nearest available appropriate level of care was at a non-VA medical center);

 (d) At the time the emergency treatment was furnished, the Veteran was enrolled in the VA health care system and had received medical services under authority of 38 U.S.C. Chapter 17 within the 24-month period preceding the furnishing of such emergency treatment;

 (e) The Veteran is financially liable to the provider of emergency treatment for that treatment;

 (f) The Veteran has no coverage under a health-plan contract for payment or reimbursement, in whole or in part, for the emergency treatment (this condition cannot be met if the Veteran has coverage under a health-plan contract but payment is barred because of a failure by the Veteran or the provider to comply with the provisions of that health-plan contract-e.g., failure to submit a bill or medical records within specified time limits, or failure to exhaust appeals of the denial of payment);

 (g) If the condition for which the emergency treatment was furnished was caused by an accident or work-related injury, the claimant has exhausted without success all claims and remedies reasonably available to the Veteran or provider against a third party for payment of such treatment; and the Veteran has no contractual or legal recourse against a third party that could reasonably be pursued for the purpose of extinguishing, in whole, the Veteran's liability to the provider; and

 (h) The Veteran is not eligible for reimbursement under 38 U.S.C.A. § 1728 for the emergency treatment provided (38 U.S.C.A. § 1728 authorizes VA payment or reimbursement for emergency treatment to a limited group of Veterans, primarily those who receive emergency treatment for a service-connected disability). 

See 38 C.F.R. § 17.1002(a)-(h) (2016). 

As noted, all of the above elements must be satisfied for a claimant to qualify for payment or reimbursement. Zimick v. West, 11 Vet. App. 45, 49 (1998); Malone v. Gober, 10 Vet. App. 539, 544 (1997). In essence, these criteria under 38 U.S.C.A. § 1725 and 38 C.F.R. § 17.1002(a)-(h) are conjunctive, not disjunctive. See Melson v. Derwinski, 1 Vet. App. 334 (June 1991) (noting that use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met]); compare Johnson v. Brown, 7 Vet. App. 95 (1994) (providing that only one disjunctive "or" requirement must be met in order for an increased rating to be assigned).

Specifically, both medical and lay evidence may be considered in a prudent layperson evaluation for determining what constitutes a "medical emergency;" and VA should weigh "the totality of the circumstances" to determine whether a prudent layperson would consider the situation emergent. Swinney v. Shinseki, 23 Vet. App. 257, 264-266 (2009). In determining the claim, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

III. Analysis 

Primarily at issue in this case is the fourth element of the former regulations, and in particular, whether the care beyond the initial emergency evaluation and treatment was for a continued medical emergency of such a nature that the Veteran could not have been safely discharged or transferred to a VA or other Federal facility.

In this case, the Board will apply the more liberal amended statutory provisions because the Veteran's medical treatment at a non-VA facility occurred in January 2012, subsequent to the October 2008 effective date of the Act. 

The facts of this case are not in dispute. On January 3, 2012, the Veteran presented at Cassia Regional Medical Center with complaints of chest pain following a heart attack and stent placement only three months prior in November 2011. The treating physician attempted to contact the VA Hospital in Boise, Idaho in order to transfer the Veteran, but was unable to make contact with any personnel at the hospital. The physician then contacted the VA clinic in Twin Falls (CBOC) for direction on what to do with the Veteran once his chest pain resolved, and was authorized to perform a nuclear medicine scan. The treating physician ordered the test immediately following authorization. Because the Cassia Regional Medical Center does not store radiopharmaceuticals at the hospital, the procedure was not available until the following day. The Veteran was discharged and complied with instructions to come back the next day in order to receive the procedure. According to a July 2013 letter from the Twin Falls CBOC, that facility is not equipped to perform the test needed by the Veteran. 

The criteria for payment or reimbursement for emergency services in non-VA facilities under 38 U.S.C.A. § 1725 include the requirement that the services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health.

The regulations do not require that a Veteran's treatment actually be proven emergent, from a purely medical standpoint, in order to qualify for payment or reimbursement under 38 U.S.C.A. § 1725. Rather, it need only be demonstrated that the evaluation and treatment was for a condition of such a nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health.

Here, according to the Veteran's January 2012 discharge summary, the VA agreed that the procedure requested by the private treating physician was emergent. The VA denied payment or reimbursement for the medical treatment rendered on January 4, 2012 on the basis that because the Veteran was discharged the day prior to the procedure, and therefore it would have been feasible for the Veteran to receive the procedure at a VA facility. 

Two January 2013 clinical reviews were performed to assess the emergent nature of the January 4, 2012 procedure performed on the Veteran. The first review denied reimbursement because the Veteran returned to the Cassia Regional Medical Center after being discharged from emergency care. Because the procedure was not performed during approved emergency care the previous day, the reviewer concluded that the procedure did not qualify as emergent care. The second review concluded that the procedure, "needed to be done" but was unable to locate medical notes from the Veteran's hospitalization admission the previous day regarding the urgency or nature of the procedure in question, and determined that the reimbursement request must be denied because the Veteran could have received the treatment at a VA facility within a 200 mile radius of his location. 

The question now becomes, under the former regulatory provision, whether there was a continued medical emergency of such nature that the Veteran could not have received the procedure in question at a VA or federal facility, and, under the liberal amended statutory provisions, whether treatment was rendered until such time as the Veteran could be transferred safely to a Department facility or other Federal facility capable of accepting such transfer, and the non-VA facility documented reasonable attempts to transfer the Veteran.

Though the Veteran was medically stable and discharged from emergency care, the private physician deemed the procedure in question important to assess the health of the Veteran's heart and received approval from the VA to perform the procedure while the Veteran was admitted on January 3, 2012. The private physician documented his efforts to contact a VA hospital with the ability to admit the Veteran and perform the necessary procedure, but was unable to make contact after several attempts. The physician ordered the procedure immediately following approval.

In July 2013, the Veteran's VA physician at the Twin Falls CBOC submitted a letter stating that the Veteran was appropriately sent for a nuclear cardiac stress test which could not have been obtained urgently at her facility.

The record shows opinions from both the Veteran's private and VA physicians agreeing on the medical necessity and urgency of the procedure in question given the Veteran's history of heart failure. The record also shows attempts to transfer the Veteran to a VA facility.

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. See 38 C.F.R. § 3.102. 

Accordingly, the Board finds that there was a continued medical emergency justifying the necessity of the procedure in question, and that the Veteran could not have been safely discharged or transferred to a VA or other Federal facility equipped to perform the needed procedure as demonstrated by Cassia Regional Medical Center's documented reasonable attempts to transfer the Veteran.

Assuming that all other criteria for reimbursement under 38 U.S.C.A. § 1725 and 38 C.F.R. §§ 17.1000-1002 are satisfied, the Veteran is entitled to payment or reimbursement of emergency medical treatment rendered at Cassia Regional Medical Center on January 4, 2012.

In reaching this decision, the Board has extended the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107 (West 2014).


ORDER

Entitlement to payment or reimbursement of medical treatment rendered at Cassia Regional Medical Center on January 4, 2012, is granted.



____________________________________________
J.W. FRANCIS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs